**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **OASIS S.A.R.L.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. MJM-25-3909** |
| **UNITED SOURCE ONE, INC.,** | * | |
| **Defendant.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendant United Source One, Inc.'s ("Defendant") motion to dismiss the Complaint filed by plaintiff Oasis S.A.R.L. ("Plaintiff"). ECF No. 7. Plaintiff filed a response in opposition to the motion. ECF No. 10. A hearing is not necessary to resolve it. *See* Local Rule 105.6 (D. Md. 2025). For the reasons explained herein, the motion to dismiss is denied.

## I. BACKGROUND

The following facts are drawn from the allegations in Plaintiff's Complaint. ECF No. 1 ("Compl.").

Plaintiff is a wholesale food company licensed and authorized by the Republic of Lebanon, Ministry of Finance. Compl. ¶ 2. Plaintiff primarily supplies bulk food products to overseas companies. *Id.* ¶ 7. Two of Plaintiff's primary customers are Lebanese Prime Food ("LPF") and Assel Company ("Assel"), both based in Lebanon, and which supply high-end restaurants and supermarkets. *Id.* ¶ 8.

Defendant is a corporation authorized to do business in the State of Maryland, with its principal office located in Harford County, and specializes in the wholesale and distribution of food and beverage products. *Id.* ¶ 3. In February 2024, Plaintiff contacted Defendant's sales department regarding an order for large quantities of American food products to be shipped to LPF and Assel in Lebanon. *Id.* ¶ 10. This was the parties' first business transaction. *Id.* ¶ 11.

On or about March 20, 2024, Defendant's Vice President Jessica Brown contacted Plaintiff and offered to assist with an order and to open an account for Plaintiff for future business. *Id.* ¶ 15. On or about March 25, 2024, Plaintiff contacted Brown by email and identified the products it wanted to include in the order ("Order Q1921"). *Id.* ¶ 16. A few days later, Brown emailed Plaintiff to inform it that one of the requested products, Louisiana Sauce, would be delayed by three weeks. *Id.* ¶ 17. The parties ultimately agreed on the products and prices for the order, and Plaintiff wired a payment of $44,772.00 to Defendant on April 1, 2024. *Id.* ¶ 18; *see also* ECF No. 1-5 (Ex. C). On or about May 23, 2024, Order Q1921 was transferred from Defendant's warehouse in Belcamp, Maryland to a port in New York. *Id.* ¶ 21. On or about April 16, 2024, Plaintiff contacted Brown via WhatsApp to place a second order ("Order Q1966"). *Id.* ¶ 19; *see also* ECF No. 1-6 (Ex. D). On or about May 13, 2024, Plaintiff contacted Brown regarding the price of a full container of mayonnaise directly from a manufacturer, at which time Plaintiff placed a third order ("Order Q1967"). *Id.* ¶ 20; *see also* ECF No. 1-7 (Ex. E). On or about May 17, 2024, Plaintiff wired an additional payment of $120,407.00 to Defendant, which satisfied the remaining balance due on the three orders. *Id.* ¶ 22.

On or about June 6, 2024, Plaintiff informed Defendant: "I cannot have close expiry [expiration] dates. Because by the time you ship the container and receive it, it needs more than 60 days. The custom[er] in Beirut refuses products has less than 105 days. And I don't want

problems at the port with the custom[s]. Beside it will be very hard to sell." *Id.* ¶ 23. According to the Complaint, "Defendant stated that all products would comply with the Plaintiff's expiration date request and standards." *Id.* ¶ 24.

On or about June 28, 2024, Brown created a WhatsApp group chat with Plaintiff and added her sales assistant, Andrew. *Id.* ¶ 25. Andrew offered Plaintiff large discounts on French's Dijon Chardonnay Mustard and French's Stone Ground Mustard. *Id.* ¶ 26. He informed Plaintiff that these items were already in stock and could be sold at a highly discounted price due to an overstock. *Id.* ¶ 27. Plaintiff inquired about the expiration dates on the products. *Id.* ¶ 28. After receiving a picture of the product, Plaintiff stated: "That is fine. Go ahead. But the most important thing is the expiry [expiration] date. I hope it is new production." *Id.* Defendant reassured Plaintiff of the proper expiration date, stating "Yes, they are current production. I will go ahead and put this on the order." *Id.* Plaintiff agreed to purchase these products at the quoted price with Defendant's express reassurance that the products had at least 105 days until any expiration date. *Id.* ¶ 29. During the parties' discussion about the products, "Defendant verified to Plaintiff that it had received the products directly from the manufacturer, then prepared, boxed, packed, and sealed all such products and shipments itself within their warehouse, with no third party in between." *Id.* ¶ 30.

On or about July 7, 2024, Order Q1967 was transferred from Chambersburg, Pennsylvania to a port in Newark, New Jersey for shipment to the Port of Beirut, Lebanon. On or about July 18, 2024, Order Q1966 was transferred from Defendant's warehouse in Belcamp, Maryland to a port located in New York for shipping to the Port of Beirut, Lebanon. *Id.* ¶¶ 31–32. Order Q1921 arrived at the Port of Beirut, Lebanon on or about July 23, 2024. Due to lab testing requirements for the soy sauce manufactured in the United States, however, the order was not released to the

customer until August 30, 2024. *Id.* ¶ 33. Order Q1967 arrived at the Port of Beirut, Lebanon on or about August 25, 2024, and was released to the customer on September 10, 2024. *Id.* ¶ 34. Order Q1966 arrived at the Port of Beirut, Lebanon on or about September 11, 2024, and was released to the customer on October 4, 2024. *Id.* ¶ 35

Each order was memorialized by a Bill of Lading, an invoice from Defendant, a Dating Spreadsheet, a Packing List from Defendant, a Certificate of Origin from Defendant, and a Health Certificate from Defendant. *Id.* ¶ 36. According to the Complaint, these documents "verified" the production and expiration dates of the products, among other identifying information. *Id.* ¶ 37.

Approximately three weeks after the products were released to LPF and Assel, their customers began contacting them to return or dispose of the products and demanding full refunds because the products' expiration or "sell by" dates allegedly had been tampered with. *Id.* ¶ 38. The allegedly tampered labels and expiration or "sell by" dates also resulted in LPF being reported to the Lebanon Ministry of Health for selling expired products with allegedly fraudulent expiration dates. *Id.* ¶ 39.

According to the Complaint, Plaintiff learned only then that Defendant had engaged in extensive deceptive and fraudulent practices, including allegedly erasing the manufacturers' expiration dates digitally printed directly on the products' bottles and creating its own allegedly fraudulent expiration dates using white stickers. *Id.* ¶ 40. The stickers allegedly identified "P: Date," representing the production date, and "E:," representing the expiration date, and purported to indicate that the dates had been established by the manufacturers. *Id.* The Complaint includes photographs of allegedly altered products, attached as Exhibit F. *See* ECF No. 1-8 (Ex. F).

Plaintiff was forced to refund LPF and Assel in full. *Id.* ¶ 41.

## II. STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]'

devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

If a claim alleges fraud, it is subject to the pleading requirements of Rule 9(b). This rule requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). This heightened standard requires a plaintiff to set forth, "at a minimum, . . . the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison*, 176 F.3d at 784).

## III. DISCUSSION

### A. Counts I through IV

In Counts I, II, III, and IV of the Complaint, Plaintiff asserts claims for fraud, fraudulent inducement, intentional misrepresentation, and negligent misrepresentation, respectively.

Defendant argues that these counts should be dismissed for Plaintiff's failure to identify with specificity allegedly false statements attributed to Defendant; to "identify the time, place, or manner of specific fraudulent statements"; and to state "the identities of persons who allegedly made specific fraudulent statements, [and] what those persons supposedly gained therefrom." ECF No. 7-1 at 6–7. Plaintiff responds that the factual allegations in its Complaint, together with Exhibits C, D, E, and F, are sufficient to state the claims asserted in the fraud-based counts. *See* ECF No. 10-1 at 5–6. The Court finds that Plaintiff's fraud-based claims meet the applicable pleading standards.

"Under Maryland common law, 'fraud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Bochenski v. M & T Bank*, Civ. No. ELH-14-1031, 2015 WL 1040281, at *19 (D. Md. Mar. 10, 2015) (citing *Sass v. Andrew*, 832 A.2d 247, 261 (Md. App. Ct. 2003)) (cleaned up). Thus, "[r]egardless of the particular theory," *id.*, fraud plaintiffs ordinarily must show:

> 1) that the defendant made a false representation to the plaintiff;
>
> 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;
>
> 3) that the misrepresentation was made for the purpose of defrauding the plaintiff;
>
> 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and
>
> 5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*DeBellis v. Woodit*, Civ. No. BAH-23-1009, 2024 WL 1140800, at *5 (D. Md. Mar. 14, 2024) (quoting *Bochenski*, 2015 WL 1040281, at *19); *see also Auto USA, Inc. v. DHL Express (USA), Inc.*, Civ. No. CCB-17-1312, 2018 WL 1046302, at *2, n.2. (D. Md. Feb. 26, 2018) ("In Maryland,

each of Auto USA's intentional misrepresentation claims—fraud & deceit; false representation; fraudulent inducement—are established by the same five elements.").

As discussed in Part II *supra*, Rule 9(b) imposes a "heightened pleading standard" on fraud claims, requiring that a plaintiff "state with particularity the circumstances constituting fraud or mistake." *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (quoting Fed. R. Civ. P. 9(b)). These circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman*, 776 F.3d at 219 (quoting *Harrison*, 176 F.3d at 784). In other words, "a plaintiff must allege facts establishing the 'who, what, when, where, and how' of the claimed fraud." *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 625 (D. Md. 2012) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)); *see also U.S. ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 853 (D. Md. 2013); *Harden v. Budget Rent A Car Sys., Inc.*, 726 F. Supp. 3d 415, 426–27 (D. Md. 2024).

The instant Complaint satisfies Rule 9(b). Plaintiff alleges that Defendant engaged in deceptive conduct that induced Plaintiff to enter into business transactions that it otherwise would not have entered. Specifically, Plaintiff alleges that Defendant intentionally altered the manufacturers' expiration dates on products included in Orders Q1921, Q1967, and Q1966, despite Plaintiff's stated requirements concerning expiration dates and Defendant's commitment to meet those requirements. Plaintiff further alleges that all three orders originated from Defendant's warehouse in Belcamp, Maryland, where Defendant verified that it had received the products directly from the manufacturers and then itself prepared, boxed, packed, and sealed the products for shipment, without any intervening third party. And Defendant received payment for the

shipments, having reassured Plaintiff that the products were not expired and "had at least 105 days until any such expiration date per the parties' prior discussions and agreements." Compl. ¶ 29. These allegations identify the "who" and "what" of the alleged fraud, and what was gained: Defendant falsely altered the manufacturers' expiration dates on specific products it shipped to Plaintiff in exchange for payment.

The Complaint also alleges the "when," "where," and "how." Exhibit F contains photographs of a Dijon mustard container and a Chick-Fil-A sauce bottle that appear to show that the expiration dates printed by the manufacturers directly on the products are missing. Instead, the products bear white stickers that Plaintiff alleges Defendant placed on the containers. Plaintiff later learned, after the products were released to LPF and Assel, that LPF was reported to the Lebanon Ministry of Health and the products were rejected due to their expiration and the tampering of the expiration dates. Taken together with the allegations concerning Defendant's exclusive handling of the products after direct receipt from manufacturers, the foregoing allegations permit a reasonable inference that Defendant replaced or otherwise falsely altered the manufacturers' expiration dates before shipping the products to Plaintiff.

Defendant appears to contend that Plaintiff's fraud claims fail because the Complaint does not identify the products' actual expiration dates and therefore does not allege a specific false representation. That argument misses the mark at this juncture. The allegations in the Complaint support a reasonable inference that Defendant altered or replaced the true expiration dates for products printed on them by their manufacturers. That inference is supported by the rejection of the products by end customers based on product expirations and discovery of the altered and replaced expiration dates. There is no lack of clarity or uncertainty about what true facts Plaintiff

contends that Defendant misrepresented. Whether those allegations can be proved is a question for a later stage of the proceedings—not a basis for dismissal under Rule 12(b)(6).

Finally, Defendant argues that Plaintiff cannot meet the Rule 9(b) standard by generally identifying a number of products without specifying which particular products had fraudulent expiration dates. This argument does not warrant dismissal of Counts I through IV. At a minimum, Plaintiff identifies as specific examples certain Dijon mustard and Chick-fil-A sauce products that it purchased from Defendant (which are shown in photos attached to the Complaint) and describes the alleged false removal and replacement of their expiration dates. *See* Compl. ¶ 40, Ex. F. These details are sufficient at the pleading stage to allow the claims to proceed. *Cf. Nordstrom, Inc. v. Schwartz*, Civ. No. GJH-18-3080, 2019 WL 4221475, at *5 (D. Md. Sept. 5, 2019) ("Although Plaintiff need not outline in detail the time, location, and content of all 5,809 fraudulent transactions in which Defendant allegedly engaged, it should allege specific examples of Defendant's misrepresentations." (citing *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 474 (D. Md. 2009))).

The Fourth Circuit has explained that a district court "should hesitate to dismiss a complaint under Rule 9(b)" when "the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. The Court is satisfied that Plaintiff's fraud-based claims meet the applicable pleading standards. Defendant's motion to dismiss Counts I through IV is denied.

**B. Count V and VI**

Plaintiff asserts claims for breach of contract in Count V of the Complaint and an promissory estoppel and detrimental reliance in Count VI. Defendant argues that Count V fails because Plaintiff "identifies neither a specific basis for a contractual obligation regarding product

dates nor any breach of the same, for example, by pointing to any particular alleged fraudulent date." ECF No. 7-1 at 7. Defendant also contends that Plaintiff's Count VI must be dismissed because there is no dispute that the parties' dealings were "contractual in nature" and, therefore, Plaintiff cannot pursue quasi-contractual relief. *Id.* at 8–9. The Court agrees with Plaintiff that the Complaint states a plausible claim for breach of contract claim and a plausible promissory estoppel claim in the alternative to recovery for a contractual breach.

"The elements of a breach of contract claim under Maryland law are (1) a contractual obligation and (2) material breach of that obligation." *Ezzat v. AmeriGas Propane, L.P.*, Civ. No. EA-22-2918, 2024 WL 4169974, at *4 (D. Md. Sept. 12, 2024) (citing *RRC Ne., LLC* v. *BAA Maryland, Inc.*, 413 Md. 638, 658 (2010)).

Defendant's argument that Plaintiff has not identified a specific contractual obligation regarding the products' expiration dates is unpersuasive. Plaintiff alleges that it expressly informed Defendant that it could not accept products with less than 105 days remaining before expiration. Compl. ¶ 23. According to Plaintiff, Defendant responded that all products would comply with Plaintiff's expiration-date requirements. *Id.* ¶ 24. Plaintiff further alleges that, when it specifically inquired about the expiration dates of discounted French's mustard products, Defendant represented that the products were "current production." *Id.* ¶¶ 26–28. Plaintiff alleges that it agreed to purchase the products based on Defendant's reassurances that the products were not expired and had at least 105 days remaining before expiration. *Id.* ¶ 29. Plaintiff also alleges that Defendant's invoices, dating spreadsheets, packing lists, and other documents verified the products' production and expiration dates. *Id.* ¶¶ 36–37. Ultimately, the products were rejected by end customers due to expiration and discovery of falsified expiration dates. Defendant claimed to have received the products directly from their manufacturers without any intermediary. Plaintiff's

allegations are sufficient to identify a plausible contractual obligation concerning the products' expiration dates that Defendant materially breached.

Plaintiff also states a plausible promissory estoppel claim. "Promissory estoppel is a quasi-contractual claim, which is an equitable remedy that permits recovery 'where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.'" *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 626 (D. Md. 2003) (quoting *Swedish Civil Aviation Admin. v. Project Management Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002)). Under Maryland law, promissory estoppel requires:

> (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.

*Timilon Corp. v. Empowerment Just. Ctr. Corp.*, 738 F. Supp. 3d 669, 689–90 (D. Md. 2024) (citing *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 451 (D. Md. 2013), *aff'd sub nom. Goss v. Bank of Am., NA*, 546 F. App'x 165 (4th Cir. 2013)). Here, Plaintiff alleges that Defendant made reassurances about the products' expiration dates with a reasonable expectation that Plaintiff would rely upon them, having emphasized the importance of the expiration dates, and that Plaintiff reasonably relied upon Defendant's promises to its detriment, in that the products were ultimately rejected due to expiration and refunds were demanded.

Plaintiff is permitted to plead its promissory estoppel claim in the alternative to its breach-of-contract claim. Although a party may not recover under both a theory for breach of contract and quasi-contract theory, a plaintiff "is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute." *Vu Hoang v. Georgetown Contractors, Inc.*, Civ. No. AW-10-2117, 2010 WL 4485729, at *3 (D. Md. Nov. 9, 2010) (citing

*Swedish Civil Aviation Admin.*, 747 A.2d at 792 and Fed R. Civ. P. 8(e)(2)); *see also Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 608–09 (Md. 2000) (explaining that a quasi-contractual claim generally cannot arise when a contract exists between the parties concerning the same subject matter, subject to limited exceptions, including fraud or bad faith). Here, the parties dispute the scope of Defendant's contractual obligations concerning the products' expiration dates. "[A]t this early stage of the proceeding, this Court will permit [Plaintiff] to proceed on both its contractual and quasi-contractual theories of liability." *Vivimetrix, LLC v. Monument Traders All., LLC*, Civ. No. SAG-24-03046, 2025 WL 744079, at *3 (D. Md. Mar. 7, 2025). Defendant's motion to dismiss Counts V and VI is denied.

**C. Count VII and VIII**

In Counts VII and VIII, Plaintiff asserts claims for breach of express warranty and implied warranty, respectively. Defendant argues, again, that Plaintiff's warranty claims must fail because "Plaintiff does not identify any specific warranties made or breached, much less specific affirmative statements of fact that were false." ECF No. 7-1 at 9; *see also id.* at 10 ("[T]his claim suffers from the same defects as the others as it does not allege facts showing identifiable products that purportedly were deficient."). Plaintiff answers that Defendant warranted to it that the products were not expired and complied with Plaintiff's expiration-date requirements. ECF No. 10-1 at 8.

To state a claim for breach of express warranty under Maryland law, a plaintiff must allege that "(1) a warranty existed; (2) the product did not conform to the warranty; and (3) the breach proximately caused the injury or damage." *Harden v. Budget Rent A Car Sys., Inc.*, 726 F. Supp. 3d 415, 432 (D. Md. 2024) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 223 (4th Cir. 2009)). "A plaintiff must set forth the 'terms and conditions of a warranty.'" *Id.* at 433 (quoting *Moczulski v. Ferring Pharms., Inc.*, Civ. No. JKB-18-1094, 2018 WL 3496433, at *5 (D. Md. July 20, 2018)). Under Maryland law, either an "affirmation of fact or promise made by the seller to

the buyer" about the goods or a "description of the goods" can create an express warranty that the good will conform to the affirmation or description when the affirmation or description is "part of the basis of the bargain . . . ." Md. Code Ann., Com. Law. § 2-313(1). Here, first, Plaintiff alleges that Defendant affirmed that it would ship products that met Plaintiff's expiration-date requirements, which, given Plaintiff's emphasis on the importance of expiration dates, was part of the parties' bargain. Plaintiff further alleges that the products were ultimately rejected by end customers due to expiration, supporting a reasonable inference that the products did not conform to Defendant's warranty, and resulting in demands for refunds and damages to Plaintiff. The facts in the Complaint suffice to state a plausible claim for breach of express warranty.

To state a claim for breach of implied warranty of merchantability, a plaintiff must allege "that a product is not of merchantable quality and that he suffered an injury as a result." *Montgomery v. CSX Transp., Inc.*, Civ. No. SAG-14-1520, 2015 WL 770470, at *4 (D. Md. Feb. 20, 2015) (quoting *Pinney v. Nokia, Inc.*, 402 F.3d 430, 444 (4th Cir. 2005)). "A product is not of merchantable quality when it is not fit for the ordinary purposes for which it is used." *Hunter v. Abbott Lab'ys, Inc.*, 829 F. Supp. 3d 36, 62 (D. Md. 2026) (quoting *Montgomery*, 2015 WL 770470, at *4); *see also* Md. Code Ann., Com. Law. § 2-314(2)(c). Here, the Complaint includes allegations that Defendant received the products at issue directly from manufacturers. Plaintiff's allegation that end customers rejected the products due to expiration supports a reasonable inference that they were not of merchantable quality when sold to Plaintiff. The Complaint is sufficient to state a plausible claim for breach of implied warranty.

Defendant's argument that the Complaint fails to identify specific warranties and breaches is unpersuasive, for the same reasons discussed in Part III.B, *supra*. Drawing all reasonable inferences in Plaintiff's favor, the Complaint and its attached exhibits include enough facts,

accepted as true, to show that Defendant made specific representations concerning the production and expiration dates of products sold to Plaintiff and that the products delivered did not conform to those representations and were not fit for their ordinary use. Accordingly, Defendant's motion to dismiss Counts VII and VIII is denied.

## IV. ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland, hereby ORDERED that Defendant's Motion to Dismiss (ECF No. 7) is DENIED.

| | |
|---|---|
| August 26, 2026 | /S/ |
| Date | Matthew J. Maddox<br>United States District Judge |